# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SANDRA SUPER,
     Plaintiff,

     v.

J. D'AMELIA & ASSOCIATES, LLC;
WILFRED J. RODIE, SR.; PATRICIA
WILSON-COKER, individually and as
Commissioner of the Department of Social
Services; DANIEL MURPHY; CARLA
CORRIGAN; and KEVIN NELSON,
individually and as Executive Director of the
Stratford Housing Authority,
     Defendants.

No. 3:09cv831 (SRU)

## RULING ON MOTIONS TO DISMISS and MOTION FOR LEAVE TO AMEND THE COMPLAINT AND JOIN ADDITIONAL PARTIES

This case presents a claim of housing discrimination against multiple state, local, and

private defendants responsible, in part, for the administration of the plaintiff's federal housing

benefits and the provision of her housing.  Several defendants – J. D'Amelia & Associates, LLC,

Patricia Wilson-Coker, Carla Corrigan, and Kevin Nelson – moved to dismiss the plaintiff's

complaint.  Those motions, which are largely duplicative, present the question whether a

mentally ill person who commits a crime at her residence is categorically barred from seeking a

reasonable accommodation to continue receiving federal housing benefits while she obtains

mental health treatment that would help prevent her from committing any similar crimes in the

future.  The defendants argue that the plaintiff cannot, as a matter of law, obtain relief on the

facts she has pled.  In response, the plaintiff argues that it is possible for a fact-finder to

determine that her requested accommodation was necessary and reasonable and, therefore, her

complaint should not be dismissed.

For the following reasons, I conclude that the motions to dismiss should be denied

because the plaintiff's complaint states a viable claim for relief. The touchstone in this case is the reasonableness of the plaintiff's requested accommodation, an issue of fact to be resolved at trial or, at the earliest, summary judgment. But I also recognize that the question the plaintiff presents is a close one. The defendants' alleged failure to accommodate her arises from their application of a neutral policy prohibiting the provision of rental assistance to convicted felons and tenants who have committed violent crimes on their property. That policy is, on its face, entirely reasonable. Nevertheless, on the allegations put forward in the plaintiffs' complaint, the defendants' application of the policy against the plaintiff also could be found to be a denial of a reasonable accommodation in violation of federal antidiscrimination laws. The defendants' motions to dismiss are therefore denied.[1]

## I.    Background

The following facts are drawn from the complaint. The plaintiff, Sandra Super, is a psychiatrically impaired woman who receives social security disability payments on account of her mental illness. From June 2001 until November 2008, she rented an apartment in Stratford, Connecticut owned by Wilfred J. Rodie, Sr. In November 2007, Super applied for a Section 8 rental subsidy; she and Rodie signed a new lease with a Section 8 addendum on February 12, 2008. Super received Section 8 assistance from February 12, 2008 until her benefits were terminated in November of that year.

Section 8, a federal housing subsidy program, provides rental assistance in the form of payments made directly to landlords; eligible tenants receive subsidies equal to the difference

---

[1] Defendant Patricia Wilson-Coker's motion is granted in limited part on sovereign immunity grounds, however.

between the tenancy's rental value and a percentage of the tenant's monthly income that she pays in rent.[2]  *See generally Taylor v. Housing Auth. of New Haven*, 267 F.R.D. 36, 54-55 (D. Conn. 2010) (describing framework of Section 8 tenant assistance).  The program is funded federally but administered at the state and local levels by public housing agencies ("PHAs").  The Connecticut Department of Social Services ("DSS") serves as the state's PHA and subcontracts Section 8 administration to local subagencies.  The subagencies responsible for Super's Section 8 payments were the Stratford Housing Authority ("SHA"), a public corporation, and J. D'Amelia & Associates ("D'Amelia"), a Connecticut limited liability corporation.

Rodie employed a worker, Daniel Murphy, to perform maintenance on his buildings, including Super's.  (Murphy may also have lived in Super's building.)  Murphy and Super had a foul relationship.  Between November 2007 and May 2008, Murphy regularly antagonized Super by verbally harassing her and, in some cases, threatening her physical safety.  Super complained to another of Rodie's employees about Murphy's obnoxious and threatening behavior, and left a voice message for Rodie to the same effect.  Rodie never called Super back, and Murphy was neither disciplined nor reassigned to a different building.

On May 26, 2008, Super and Murphy got into a physical altercation on the steps leading to Super's apartment.  Murphy called Super several names and used obscene language, and pressed her doorbell repeatedly in a harassing manner.  Murphy's conduct "exacerbated plaintiff's mental impairments and caused her great emotional upset."  Cmplt. ¶ 29.  Riled up, Super confronted Murphy with a knife, cutting his shirt but not injuring him physically.  After

---

[2] Super's Section 8 payments covered her entire rent because she earned no monthly income.  Although the complaint does not say it explicitly, any income she received was presumably limited to social security and other government benefits.

her opening strike, Super retreated and ran up the stairs. Murphy tackled her and the two sprawled into Super's apartment. Murphy subdued her and, with the assistance of his wife who was nearby, sprayed Super's face with pepper spray. The police were called and Super was arrested. She was charged with attempted first-degree assault and breach of the peace. Her bond was set at $250,000, an amount that she was unable to pay. Immediately after Super's arrest, Rodie attempted to evict her. He notified Super's mother on June 5, 2008 that she had two weeks to clear Super's belongings out of the apartment. Super's mother removed Super's property sometime that month and Rodie changed the locks on the apartment.

Super was released from prison on July 22, 2008 after agreeing to plead guilty to the assault charge and accept a five-year suspended sentence. That plea and sentence were entered on September 16, 2008. As part of her suspended sentence, Super was required to undergo mental health screening and treatment.

Six days later, SHA mailed a notice to Super that her Section 8 benefits were to be cancelled. Super requested a hearing; that hearing was noticed on November 6, 2008 and held on November 17, 2008 before Carla Corrigan, a D'Amelia employee. At the hearing, a social worker testified on Super's behalf and put forward three letters – two from personnel at Bridge House, a center for adults recovering from psychiatric difficulties, and one from a social worker at Southwest Community Health Center – requesting that D'Amelia and SHA make a reasonable accommodation to permit Super to maintain her rent subsidy while she underwent court-ordered mental health treatment. After the hearing, Corrigan issued a written decision affirming the denial of Super's Section 8 benefits. In that decision, Corrigan ruled that Super's assault conviction eliminated her Section 8 eligibility and that no accommodation could be made for her.

Super commenced this suit in May 2009, alleging violations of her rights under the Fair Housing Act and its amendments ("FHA"), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), in addition to other claims. She seeks injunctive relief and compensatory and punitive damages. Super sues the following defendants: Rodie, Murphy, D'Amelia and Corrigan, Kevin Nelson, the executive director of SHA, and Patricia Wilson-Coker, the DSS Commissioner. Defendants Wilson-Coker, D'Amelia, Corrigan, and Nelson have moved to dismiss Super's claims against them. Super has also filed a motion for leave to amend her complaint, which Wilson-Coker opposes.

## II.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

**III.    Discussion**

    A.    <u>Motions to dismiss</u>

The defendants' motions to dismiss are essentially redundant.[3]  (Indeed, the D'Amelia-Corrigan and Nelson papers copy verbatim Wilson-Coker's motion to dismiss, which was filed first.)  Therefore, there is no need to address each defendant's motion separately.  Instead, it is best to address one at a time the issues that the motions jointly raise.

The relevant portions of the FHA, ADA, and Section 504 offer the same guarantee that a covered entity, such as a Section 8 administrator, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities.[4]  Analysis

---

[3]  The exception to this is Wilson-Coker's motion, which includes arguments that this court lacks jurisdiction over Super's case because (1) Super did not properly serve process on Wilson-Coker, and (2) Super lacks standing to sue Wilson-Coker because Wilson-Coker was not personally involved in the events giving rise to the termination of Super's Section 8 assistance. With respect to the issue of service of process, Super concedes that Wilson-Coker is the wrong defendant to sue and moves to amend her complaint to substitute a new defendant for her.  As discussed below, I grant Super's motion to amend her complaint, so the improper service of process argument is moot.  Next, the claim that the DSS Commissioner was not adequately involved is better understood as a challenge that Super fails to state a claim for relief than a challenge Super's standing and thus to the court's subject matter jurisdiction.  I take up this ground for dismissing the complaint below.  Unlike the other defendants, Wilson-Coker also argues that she is protected by sovereign immunity.  I take up that defense below, as well.

[4]  The relevant statutory language is as follows: Under the FHA, it is unlawful to discriminate "against any person in the terms, conditions, privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap," and "discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(2) & (f)(3)(B). I assume that Section 8 administrators are covered by the FHA because the defendants have not challenged the FHA's application to them and courts have generally interpreted the FHA to cover parties who are not strictly property owners or landlords.  *See Taylor*, 267 F.R.D. at 48-49 (assuming that FHA is applicable to plaintiffs' claims against Section 8 administrator).

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

of a reasonable accommodation claim under the three statutes is treated the same. *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 & n.4 (2d Cir. 2003); *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 603 (4th Cir. 1997); *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 n.1 (7th Cir. 1995). For the purposes of simplicity, I refer to Super's claims as if they were brought under the FHA, although any discussion of her FHA claim applies equally to her ADA and Section 504 claims unless noted otherwise.

The defendants move to dismiss Super's claims that they failed to provide a reasonable accommodation on the following grounds: (1) the "accommodation" requested in Super's complaint does not amount to a reasonable accommodation as a matter of law; (2) the pleadings do not establish that her requested accommodation was "necessary" to permit her to continue living independently in spite of her disability; (3) Super has not alleged that her disability was the sole basis for the termination of her Section 8 benefits; (4) the pleadings do not allege sufficient personal involvement by the defendants to establish liability under the FHA; and (5) certain

---

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Regulations promulgated pursuant to the Act hold that "a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity," 28 C.F.R. § 35.130(b)(7).

Section 504 is similarly worded. The statute states: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Housing regulations define a "qualified individual" under Section 504 as "an individual with handicaps who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the recipient can demonstrate would result in a fundamental alteration in its nature." 24 C.F.R. § 8.3.

defendants – namely, DSS and Wilson-Coker – are immune from suit under the Eleventh Amendment.  Before examining the bases for the defendants' motions to dismiss, however, it is helpful to set forth the relevant statutory and regulatory provisions governing Section 8, the benefits of which Super claims she was unlawfully denied, and its interaction with the FHA, ADA, and Section 504.  Once the governing law is set forth, I turn to the defendants' specific bases for seeking dismissal of Super's complaint.

1.   *Section 8 and the reasonable accommodation requirement of the FHA, the ADA, and Section 504*

Section 8 was established by the United States Housing Act ("USHA") and, as mentioned above, provides a federal subsidy in the form of a rental voucher for low-income tenants.  Under the statutory and regulatory framework, each of the parties to an individual Section 8 voucher – the tenant, the landlord, and the PHA – is subject to different requirements with respect to ensuring that Section 8 housing remains crime-free.  A tenant, for example, "may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises."  24 C.F.R. § 982.551(l).  Similarly, a landlord must include language in the lease stating that such violent criminal activity "shall be cause for termination of the tenancy."  42 U.S.C. § 1437f(o)(7)(D).  And a PHA is responsible for "establish[ing] standards that allow the PHA to terminate assistance under the program for a family if the PHA determines that any household member has violated the family's obligation under § 982.551 not to engage in violent criminal activity."  24 C.F.R. § 982.553(b).  When a PHA uses a criminal record to terminate a tenant's Section 8 assistance, it must notify the tenant and give her "an

opportunity to dispute the accuracy and relevance of that record." § 982.553(d)(2). By the same token, a hearing is required for terminating Section 8 assistance for the tenant's criminal activity. § 982.555(a)(1)(v).

Section 8, however, must be administered in a way that complies with "all equal opportunity requirements imposed by contract or federal law," including the FHA, ADA, and Section 504; moreover, PHAs must be certified as administering their Section 8 programs accordingly. 24 C.F.R. § 982.53(a)-(b). One such equal opportunity requirement is the reasonable accommodation rule of the FHA, found in 42 U.S.C. § 3604(f)(3)(B), which states that a landlord or PHA may not discriminate against a disabled tenant by failing to make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *See also* 24 C.F.R. § 982.552(c)(2)(iv) (mandating that if the tenant is disabled, the PHA's final decision with respect to denial of Section 8 assistance must consider whether a reasonable accommodation would enable the tenant to continue receiving her rental subsidy).

The right to an accommodation is neither automatic nor unlimited, however. Rather, to prove that she is entitled to an accommodation, a plaintiff such as Super must demonstrate that the accommodation is "(1) reasonable, and (2) necessary, (3) to afford a disabled person the equal opportunity to use and enjoy a dwelling." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783-84 (7th Cir. 2002) (citing 42 U.S.C. § 3604(f)(3)(B) and cases). The plaintiff has the burden of producing evidence establishing a prima facie case, although she only has the burden of persuasion for the second and third elements. *Id.*; *see also US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002) (favoring lower courts' burden-shifting approach in

ADA and Section 504 cases); *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (establishing analogous burden-shifting framework in Section 504 case). That is, Super must allege – and eventually prove – sufficient facts to demonstrate a facial claim that the defendants denied her an accommodation that was reasonable and necessary to afford her equal opportunity to use and enjoy her apartment.[5]

One factor that affects the reasonableness of a requested accommodation is safety. *See Oconomowoc*, 300 F.3d at 786 (accepting that public safety can be a basis for not granting an accommodation, but only if there is particular evidence introduced of the tenant's safety risk). For example, the FHA specifically excepts landlords from providing reasonable accommodations to a tenant who "constitute[s] a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damages to the property of others." 42 U.S.C. § 3604(f)(9). But if an accommodation would permit a disabled tenant to use and enjoy housing and eliminate the safety risk, then the landlord is obligated to make it. *E.g.*, *Arnold Murray Constr., LLC v. Hicks*, 621 N.W.2d 171, 175 (S.D. 2001) (discussing House Judiciary Committee report on FHA's "direct threat" exception); *see generally* Jennifer L. Dolak, Note, *The FHAA's Reasonable Accommodation & Direct Threat Provisions As Applied to Disabled Individuals Who Become Disruptive, Abusive, or Destructive in Their Housing Environment*, 36 Ind. L. Rev. 759 (2003) (describing law of reasonable accommodation for tenants who pose nuisance or safety risks because of their disabilities). Although this motion to dismiss concerns claims against the PHA, and not the landlord, the inclusion of the direct threat exception in § 3604 is a useful

---

[5] There is no claim from the defendants that Super is not disabled within the meaning of the FHA, ADA, or Section 504.

restatement of the principle that a disabled tenant's right to an accommodation under the FHA is checked by the competing value of ensuring the safety of other tenants and the public.

Moreover, in a case where the requested accommodation is an exception to the application of a neutral rule, such as the defendants' prohibition of Section 8 assistance for convicted felons or people who have committed acts of violence on their property, the plaintiff faces a more difficult burden of establishing that her request is reasonable. "[S]uch adjustments are ordinarily not *reasonable* accommodations, and therefore are required only in unusual circumstances." *Giebler v. M&B Assocs.*, 343 F.3d 1143, 1154 (9th Cir. 2003) (emphasis in original) (applying *Barnett*, 535 U.S. at 401). Super, rather, must plead "that special circumstances warrant a finding that the requested accommodation is reasonable on the particular facts." *Id.* (quoting *Barnett*, 535 U.S. at 405). Ultimately, the reasonableness of Super's requested accommodation will be a highly-fact specific inquiry that "evaluates the desireability of a particular accommodation according to the consequences that the accommodation will produce." *Borkowski*, 63 F.3d at 138.

That leads to the core dilemma of this case: resolving the tension between accommodating an individual disabled tenant without jeopardizing the welfare of her neighbors and the public. The defendants contend that safety is a, if not *the*, paramount virtue of Section 8, and therefore the denial of rental assistance to Super – which arose from the application of a neutral policy against a tenant convicted of a violent felony committed at her residence – was warranted and legal. Super, by contrast, argues that although safety is important, it does not absolve the PHA of its responsibility to make a fact-specific determination that a disabled person's possible dangerousness cannot reasonably be accommodated and to make reasonable

accommodations that permit a disabled tenant to continue receiving Section 8 payments. According to Super's complaint, the defendants failed in both regards. Having set forth the governing law, I turn now to the defendants' asserted grounds for dismissing Super's complaint.

2. *Was Super's request an "accommodation" under the FHA?*

Although it is not the defendants' leading argument in their briefs, the issue whether Super requested an accommodation is an appropriate place to start because if Super's request is not cognizable as an "accommodation," then she has no claim of discrimination under the FHA, ADA, or Section 504. The defendants characterize Super as requesting only a "second chance" – i.e., a pardon of her previous misconduct with no other conditions or modifications to her continued residence – to continue receiving Section 8 assistance. They argue that a request for a second chance and an exception to the application of a neutral policy does not constitute an accommodation under the FHA. In support, they cite several decisions where courts have held that, in the employment context, a "second chance" reinstatement after termination is, as a categorical matter, not a reasonable accommodation under Title I of the ADA, which prohibits an employer from discriminating on the basis of disability. *E.g.*, *Burroughs v. City of Springfield*, 163 F.3d 505, 507-08 (8th Cir. 1998); *Siefken*, 65 F.3d at 666-67; *Van Ever v. N.Y. State Dep't of Corr. Servs. at Sing-Sing Corr. Facility*, No. 99cv12348 (SAS), 2000 WL 127713, at *3-*4 (S.D.N.Y. Nov. 21, 2000); *Corr v. MTA Long Island Bus*, 27 F. Supp. 2d 359, 368 (E.D.N.Y. 1998), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) (unpublished opinion).

The defendants' contention that so-called "second chances" cannot be accommodations under the FHA is an overstatement. Courts have accepted a second chance – that is, a tenant's opportunity to remain in her dwelling notwithstanding the landlord's disability-neutral

justification for eviction – as an accommodation, provided that it is coupled with the tenant seeking assistance for her disability. *See, e.g.*, *Boston Hous. Auth. v. Bridgewaters*, 898 N.E.2d 848, 859 (Mass. 2009) (holding that tenant's request for housing authority to "depart from its policy of evicting tenants for engaging in a violent act, and reinstate his tenancy" constituted an accommodation under the FHA); *City Wide Assocs. v. Penfield*, 564 N.E.2d 1004 (Mass. 1991) (upholding landlord's refusal to take further steps toward eviction as an accommodation); *cf.* *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1042 (6th Cir. 2001) (describing landlord as agreeing to accommodate tenant by extending his lease one month while tenant sought treatment, although ultimately holding that subsequent accommodation was not reasonable). And the Department of Housing and Urban Development and the Department of Justice concur that an accommodation may take the form of permitting the continuance of a tenancy while a tenant seeks treatment. Joint Statement of the Dep't of Hous. & Urban Dev. & the Dep't of Justice, *Reasonable Accommodations Under the Fair Housing Act* 5 (May 17, 2004), Attach. 1 to Pl.'s Mem. in Opp'n (doc. # 51). Indeed, decisions that have held a continued tenancy not to be an accommodation have done so not on the basis that a so-called "second chance" is categorically not an accommodation, but because, on the facts presented, a continued tenancy would not have permitted the tenant to enjoy her dwelling and eliminate the risks to others. *See, e.g.*, *Groner*, 250 F.3d at 1045 (concluding that tenant failed to put forward evidence showing that proposed accommodation would be reasonable); *Arnold Murray Constr.*, 621 N.W.2d at 176 (upholding trial court's finding that tenant posed a direct threat to others and that his proposed accommodation to delay eviction would not have eliminated that threat). *But see Evans v. UDR, Inc.*, 644 F. Supp. 2d 675, 684-85 (E.D.N.C. 2009) (holding that

accommodation to policy against renting to felons whose crimes were directly related to their mental disabilities was not required under FHA because FHA's purpose was "the elimination of stereotypes based on physical and mental disabilities" and not "perceptions about the criminal histories of those with disabilities").

Furthermore, the employment cases that the defendants cite are distinguishable. The defendants' cited decisions offer brief, cursory explanations for why a second chance does not qualify as an accommodation. But they can be generally unified as expressing the point that a request for an accommodation is valid only if it will effectively enable the person to perform the essential functions of his or her position. *Cf. US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (defining, in ADA case, an "accommodation" in terms of its effectiveness in enabling an employee to work). In all of the decisions the defendants cite, the requested "second chance" would be an ineffective way of ensuring that the employee could perform her job.

In *Burroughs*, the plaintiff police officer was diagnosed as a diabetic before being hired and had assured his employer that his disability "was under control," but proved unable to perform his work because of bouts of hypoglycemia. 163 F.3d at 506, 507. The *Burroughs* Court deemed the police officer's request to remain in his position on the promise that he would improve his glucose monitoring to be too conjectural and insufficiently effective in permitting him to perform the essential functions of his position. *Id.* at 507-08. *Siefken*, on which the *Burroughs* Court heavily relied, is similar: in that case, involving another known diabetic police officer who suffered a glucose-related spell during a shift, the Seventh Circuit denied a "second chance" as an accommodation because the plaintiff had already failed "to control a controllable disability" and his continued employment would do nothing to ensure that he would control it in

the future. 65 F.3d at 666-67. And *Corr* confirms that a second chance is an inappropriate accommodation if it does not permit an employee to perform the essential functions of his position immediately; in other words, if the risk that the employee cannot perform his job's tasks is still present even with a modification, then the requested modification to his employment is not an accommodation. 27 F. Supp. 2d at 368.

In total, those cases hold that an employee with a manageable disability who fails to manage it appropriately is not entitled to a second chance to continue his employment as he did before. That is because a second chance, by itself, offers no additional safeguard or guarantee of effectiveness. In other words, a second chance is not appropriate when there is no evidence that maintaining the status quo will be sufficient to keep the person employable.

Super is requesting that her Section 8 PHA allow her to continue receiving her rental subsidy – i.e., she proposes as an accommodation that the defendants continue what they did before. Her request is distinguishable from those in the defendants' employment cases, however, because she is seeking psychiatric treatment that she was not previously receiving,[6] and which she is compelled to receive pursuant to a court order. Unlike the diabetic employee cases, Super did not have adequate mental health therapy before and after the requested accommodation. The accommodation, therefore, is not a return to the status quo before her attempted assault; instead, it is a means of improving Super's condition from before her arrest and preventing any future crimes from occurring. Indeed, if an analogy is to be drawn to the disability employment cases

---

[6] The complaint does not say this outright. But this is how one can most favorably read paragraph 40 of that document, in which Super describes the evidence she put forward at her November 17, 2008 hearing. The statements of her social workers and other therapists suggest that she was receiving treatment following her assault of Murphy that she did not have access to beforehand.

the defendants invoke, Super's request to continue receiving rental subsidies is equivalent to an accommodation granting an employee leave to seek treatment for his or her disability. *See, e.g.*, *Van Ever*, 2000 WL 1727713, at *3-*4 (holding than the ADA requires that an alcoholic employee be given unpaid time off to receive treatment, but that the statute "does not protect an alcoholic from the consequences of his behavior"). That is, Super alleges that she should have been permitted to continue receiving rental subsidies while she received mental health treatment, akin to an employee staying on an employer's books during unpaid leave for medical treatment, but that she may still lose her benefits if she engages in another violent outburst or if her treatment proves unproductive. In the employment context, to which the defendants want to analogize this case, disabled employees are entitled to some form of accommodation to permit them time to obtain the medical help they need. Super, arguably, should be entitled to the same kind of accommodation with respect to her housing benefits.

It is therefore not appropriate to hold that an extension of Super's disability benefits while she receives mental health treatment cannot be an accommodation as a matter of law. An extension of Section 8 benefits can serve as an accommodation when there is evidence to support the plaintiff's contention that continued rental subsidies will effectively allow her to use and enjoy her dwelling without posing a threat to her neighbors and the public. Dismissal of Super's claims against the defendants is not warranted, therefore, because the complaint, when taken in the light most favorable to Super, alleges facts that could support a finding that her request to continue receiving Section 8 benefits while she sought court-ordered psychiatric care was a reasonable accommodation.

Wilson-Coker, in her reply brief, makes an additional argument that a so-called "second

chance" cannot be an accommodation under the FHA. She argues that permitting such an accommodation would create discord between the FHA and the USHA, which establishes the Section 8 program, because it favors the FHA's reasonable accommodation requirement relative to the safety interest found in Section 8's law and regulations. In support, Wilson-Coker cites *Traynor v. Turnage*, 485 U.S. 535, 547-51 (1988), a case in which the Supreme Court applied the "cardinal rule" against legislative repeals by implication to uphold a provision in the "G.I. Bill" against the subsequently passed Rehabilitation Act. The defendant's argument misses the mark, however, for the simple reason that permitting a mentally disabled tenant to receive an accommodation of continued benefits does not create disharmony between the Section 8 provisions of the USHA and the reasonable accommodation requirement of the FHA. Indeed, Wilson-Coker points to no specific provision in the USHA that would be implicitly repealed by holding that a PHA may have to permit a tenant to continue to receive benefits after she has committed a crime in her dwelling. *Cf. Traynor*, 485 U.S. at 547 (describing tension between G.I. Bill provision barring tardy benefit application by "willfully" alcoholic veterans and Section 504's requirement that government services provide reasonable accommodations for disabled people). The defendant relies entirely on a purposive statement of 42 U.S.C. § 1437(a)(1)(A) that the Section 8 voucher program is to "remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings to low-income families." Notably, Wilson-Coker does not account for 24 C.F.R. § 982.552(c)(2)(iv), which, although an administrative regulation and not a legislative statute, mandates a PHA to consider whether a reasonable accommodation would make it possible for a tenant to maintain her Section 8 assistance.

 Contrary to the defendant's claims, there is nothing inconsistent between (1) the general

proposition that Section 8 is supposed to make living conditions safer, and (2) permitting a mentally disabled person to continue receiving rent subsidies so long as that accommodation is reasonable and will not pose a threat to others. Wilson-Coker is wrong to say that it would be a "mockery" to Section 8 to find that Super's proposed accommodation might be legally acceptable. Def.'s Reply 17 n.9. The PHA in this case may very well have been entitled to terminate Super's Section 8 assistance because of her criminal conduct. But the reason the PHA defendants were authorized to do so is not because granting such an accommodation is inherently inconsistent with Section 8, but because the accommodation is not reasonable or necessary under the FHA. The safety purpose of Section 8, in other words, is adequately protected by the FHA's definition of accommodations as only those that are reasonable, i.e., those that will allow a mentally disabled tenant to use and enjoy her dwelling while also neutralizing whatever threat she poses to her neighbors and the public.

3.      *Was Super's requested accommodation necessary?*

Next, the defendants argue that Super has not pled facts showing that the requested accommodation is necessary to afford her equal opportunity to use and enjoy her dwelling.[7]  In order to allege the necessity of her accommodation, Super "must show that, but for the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." *Tsombanidis*, 352 F.3d at 578 (quotation omitted); *see also Bryant Woods*, 124 F.3d at 604 ("The 'necessary' element . . . requires the demonstration of a direct linkage between the proposed accommodation and that 'equal opportunity' to be provided to the handicapped person.

---

[7] The defendants are challenging only the necessity, and not the "reasonableness," of Super's requested accommodation. *See* Wilson-Coker Mem. of Law 36 n.25.

This requirement has attributes of a causation requirement.").  The defendants, citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), argue that Super has failed to meet her obligation to plead sufficient facts to establish a plausible claim that Section 8 rental assistance was necessary for her to live where she wanted.

*Iqbal* requires that Super's complaint must be more than a conclusory "formulaic recitation of the elements" of a discrimination claim, *id.* at 1949, 1951, and that Super's complaint alleges sufficient facts for a judge, drawing on his or her "judicial experience and common sense," to find that it states a "plausible claim" for relief.  *Id.* at 1950.  Super has certainly done more than recite the elements of an FHA claim; in her complaint, she makes factual assertions to demonstrate how the defendants allegedly failed to provide her a reasonable accommodation.  And there is nothing in Super's complaint with respect to the necessity of her requested accommodation that is implausible.  Super has alleged that she is a mentally disabled woman who receives social security benefits; although she lived for years without Section 8 assistance, she applied for and received them in February 2008 and, after their termination and her eviction, she moved in with her parents, where she resides to this day.  Those allegations establish a plausible causal link between her disability, her requested accommodation, and her housing: without the requested accommodation of continued Section 8 benefits, Super cannot obtain housing on her own because of her mental illness.  The asserted facts state a plausible claim that Super needed Section 8 assistance in order to continue living independently and in the housing of her choice.

Thus, the complaint, when read in the light most favorable to Super, shows that her mental disability (1) limits her ability to work and earn enough to live independently, and (2) has

hindered her ability to receive a rental subsidy because her psychiatric illness allegedly led her to commit a crime, the combination of which renders her ineligible for Section 8 and economically unable to live on her own. The pleadings demonstrate a plausible, and not merely possible, case for the necessity of Super's requested accommodation. *Cf. Logan v. Sectek, Inc.*, 632 F. Supp. 2d 179 (D. Conn. 2009) (holding that plaintiff pled enough facts to establish "possible," but not "plausible," disability within the meaning of the ADA).

        4.     *Was Super's Section 8 rental assistance denied solely on the basis of her disability?*

The defendants argue that in order for Super to succeed on her ADA and Section 504 claims (but not her FHA claim), she must allege that the defendants' denial of Section 8 assistance and refusal to make an accommodation were based solely on her disability. That, however, is a misstatement of the law. It is true that in ADA and Section 504 claims for intentional discrimination – i.e., disparate treatment on the basis of disability – the plaintiff must allege and prove that the defendant acted with discriminatory purpose. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002) ("*RECAP*") (describing element of intentional discrimination in disparate treatment claim and who carries the burdens of persuasion and production); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995) ("Under the [disparate treatment] theory, a plaintiff can establish a prima facie case by showing that animus against the protected group was a significant factor in the position taken by the municipal decision-makers . . . ." (quotation omitted)); *Jaramillo v. Prof'l Examination Serv., Inc.*, 544 F. Supp. 2d 126, 130-31 (D. Conn. 2008) (distinguishing ADA claims as requiring plaintiff to show defendant's animus was a "significant factor" in its action, from Section 504

claims requiring plaintiff to show defendant's animus was the "sole reason" for its action).

Super, however, is not presenting a disparate treatment claim. Rather, she is charging that the

defendants discriminated against her by failing to grant her a reasonable accommodation. *See*

*RECAP*, 294 F.3d at 48-53 (distinguishing disparate treatment, disparate impact, and reasonable

accommodation claims); *Taylor*, 267 F.R.D. at 50-51 (distinguishing intentional discrimination

and reasonable accommodation claims).

The proper test for a reasonable accommodation claim under the ADA and Section 504 is

whether Super was denied Section 8 rental assistance "by reason of [her] disability." *Henrietta*

*D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003) (quoting 42 U.S.C. § 12132).[8]  In other

words, Super must plead that she required an accommodation, and was ultimately denied housing

benefits, "because of her disability" – that is, but for her mentally illness, she would not have

needed to request an exception to the application of the defendants' Section 8 policies and her

rental assistance would not have been terminated. *Id.* at 278.  Framed this way, the onus of the

reasonable accommodation analysis is not the defendants' purpose in terminating Super's rental

subsidy, but whether Super was unable to comply with the defendants' neutral policy and was

---

[8] In their briefs, the defendants cite *Jaramillo*, where the district court applied the "sole reason" test to the plaintiff's Section 504 reasonable accommodation claim.  But that discussion in *Jaramillo* was arguably dicta: the district court granted summary judgment to the defendants because no reasonable jury could find that the accommodation offered to the plaintiff was unreasonable.  544 F. Supp. 2d at 131.  Furthermore, the district court's application of the "sole reason" test appears to have been based on an over-reading of *RECAP*, the only case that the *Jaramillo* Court cited for its analysis.  *See id.*  The *RECAP* decision discussed the "sole reason" test only in the context of ADA disparate treatment claims.  So, too, did the decisions supporting *RECAP* concern disparate treatment, and not reasonable accommodation, claims.  *E.g.*, *LeBlanc-Sternberg*, 67 F.3d at 425.  *Jaramillo* is neither persuasive nor binding here; rather, the better authority is *Henrietta D.*, which postdates *RECAP* and concerns a reasonable accommodation cause of action.

denied her Section 8 rental assistance because of her disability.

Super has pled enough facts to show that her mental disability contributed to her assault of Murphy. Paragraph 29 of the Complaint states that Murphy's behavior "exacerbated plaintiff's mental impairments and caused her great emotional upset," and that her subsequent actions for which she was arrested and prosecuted were "[i]n response" to that psychological disturbance. At the motion to dismiss stage, that is enough to create a link between her purported disability and the denial of her rental subsidy, and to give rise to the inference that Super's Section 8 rental assistance was terminated by reason of her disability. Of course, Super will have the burden of proving at trial that she assaulted Murphy and subsequently lost her Section 8 benefits because of her disability, which may prove difficult. But, at this stage, when the court must take the allegations in the light most favorable to the plaintiff, Super's complaint is sufficient to withstand the defendants' motions to dismiss.

5. *Did the defendants have the requisite personal involvement?*

Defendants Wilson-Coker and Nelson claim that they cannot be sued in this case because Super has failed to plead enough facts establishing that they were personally involved in and responsible for the termination of the plaintiff's Section 8 assistance. Their personal-involvement defense has two dimensions: Wilson-Coker and Nelson argue that they cannot be sued for an FHA violation because they were not individually responsible for the termination of Super's rental subsidy and, additionally, they cannot be held vicariously liable for alleged wrongs committed by their subordinates.

In her objection to Wilson-Coker's motion to dismiss, Super concedes that Wilson-Coker should not be a defendant in this case, albeit on a different ground: Wilson-Coker resigned from

DSS in 2007, before the events of this case, and the current DSS Commissioner, Michael P. Starkowski, should be substituted for her. Because I ultimately grant Super's motion for leave to amend her complaint, I will substitute Starkowski for the purpose of this discussion.

The defendants make an allusion to section 1983 doctrine, although Super is not suing under section 1983, that in order for a public official to be liable under the FHA, ADA, and Section 504, he or she must have been personally involved in the commission of the tort such that the alleged harm is traceable to him or her. *E.g.*, *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). An official can be personally involved in a section 1983 case – and, presumably, an FHA, ADA, or Section 504 case – in several ways: by "directly participating in the infraction"; by "creat[ing] a policy or custom under which unconstitutional practices occurred, or allow[ing] such a policy or custom to continue"; or by being "grossly negligent in managing subordinates who caused the unlawful condition or event." *Id.* The defendants are also correct in noting that there is no vicarious liability by which a supervisory official can be held legally responsible purely for having supervised a subordinate who violated the plaintiff's rights. *Meyer v. Holley*, 537 U.S. 280, 285-91 (2003).

Even assuming this section 1983 law were relevant, none of it is helpful to the defendants. It is true that neither Starkowski nor Nelson made the final decision to terminate Super's Section 8 assistance. But that does not mean that they were either not responsible or could only be found responsible under a theory of vicarious liability. On the contrary, Super has alleged sufficient facts establishing that Starkowski and Nelson are liable for their maintenance of a policy to terminate rental subsidies automatically if a person is convicted of a felony, regardless whether the underlying act was caused by mental disability as Super alleges in this

case.  The accommodation that Super sought, and is still seeking as a matter of injunctive relief in this case, is an exception to that policy.  As the parties responsible for maintaining the Section 8 programs for DSS and SHA, respectively, Starkowski and Nelson were likely responsible – or, at least, likely enough to support a plausible claim for relief – for the policy's continued validity and application.  They, therefore, were personally involved within the meaning of the cases cited by the defendants.

       6.     *Is the DSS Commissioner shielded by sovereign immunity?*

Finally, defendant Wilson-Coker, as Commissioner of DSS, charges that the Eleventh Amendment immunizes her from suit.[9]  As in the previous section, I substitute Starkowski for Wilson-Coker because Super has conceded that Wilson-Coker is the wrong official to sue. Starkowski cannot claim sovereign immunity against Super's federal claims for injunctive relief alleged against her in her official capacity.  *Ex Parte Young*, 209 U.S. 123 (1908); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Starkowski, however, claims immunity against Super's causes of action for compensatory and punitive damages.

The Eleventh Amendment immunizes Starkowski from Super's FHA and ADA claims for monetary relief.  There is no congressional abrogation of sovereign immunity in the FHA. *Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal*, No. 04cv3886 (NGG), 2005 U.S. Dist. LEXIS 43028, at *5 (E.D.N.Y. June 14, 2005).  As for the ADA, abrogation is likely limited to claims that the state discriminated against a plaintiff "based on discriminatory animus or ill will towards the disabled," which Super is not alleging in this reasonable accommodation action.  *See*

---

[9] The other defendants are not state officials and have not claimed that they are entitled to sovereign immunity.

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001).  But

Starkowski has no sovereign immunity with respect to Super's Section 504 claim.  Section 504,

which prohibits disability discrimination by "any program or activity receiving Federal financial

assistance," 29 U.S.C. § 794(a), was passed pursuant to Congress's spending powers, U.S. Const.

art. I, § 8, cl. 1, and included a provision abrogating states' sovereign immunity as a condition of

receiving federal funding, 42 U.S.C. § 2000d-7(a)(1).  *Garcia*, 280 F.3d at 113.  Most circuits

have held that a state's acceptance of federal funding implies its consent to waive its sovereign

immunity from suits filed pursuant to Section 504.  *See Stanley v. Litscher*, 213 F.3d 340, 344

(7th Cir. 2000) (citing Fourth, Seventh, Ninth, and Eleventh Circuits as concluding that Section

504 "is enforceable in federal court against recipients of federal largesse," and noting that only

the Eighth Circuit reached a different conclusion in a decision that was ultimately vacated on

other grounds).  In *Garcia*, the Second Circuit determined that New York had not made a

knowing and intentional waiver of its sovereign immunity under Section 504 because the state,

believing that its sovereign immunity was already abrogated by the nearly identical provisions of

Title II of the ADA, could have been convinced that it had no sovereign immunity to waive with

respect to the Rehabilitation Act.  280 F.3d at 114; *see also Mutts v. S. Conn. State Univ.*, No.

3:04cv1746 (MRK), 2006 WL 1806179, *3-*4 (D. Conn. June 28, 2006) (describing holding of

*Garcia* and its subsequent application).  But *Garcia* holds that if a court can conclude that a state

knowingly and intentionally waived its sovereign immunity to Section 504 suits, such as by the

state's continued acceptance of federal funds, then the state and its officials are not immune from

Section 504 claims.

> At least two judges in the District of Connecticut have concluded that the state of

Connecticut and its officials have waived their sovereign immunity to suits brought pursuant to Section 504 following *Garcia*'s decision. *See Mutts*, 2006 WL 1806179, at *4 ("Therefore, if a state accepts federal funds under the Rehabilitation Act after *Garcia*, it necessarily follows from that decision that the state has knowingly waived its Eleventh Amendment sovereign immunity with respect to Section 504 claims that arose (as here) after the *Garcia* decision."); *Divergillio v. Peet*, No. 3:06cv2048 (AWT), 2009 WL 909428, *3 n.1 (D. Conn. Mar. 31, 2009) (quoting *Mutts* with approval). I agree. As Judge Kravitz explained, following *Garcia*'s decision, Connecticut and its agencies were on notice that continuing to accept federal funds implies a knowing and intentional waiver of their sovereign immunity from Section 504 actions. *Mutts*, 2006 WL 1806179, at *4. *Garcia* clarified that Connecticut, like New York, still possessed its sovereign immunity for Section 504 claims, but the continued acceptance of federal funds would thereafter constitute a waiver of the state's immunity from suit. Thus, Super may sue DSS and its officials under Section 504 and attempt to obtain whatever relief – either injunctive or compensatory – the statute provides.

Starkowski also moves for the dismissal of the ADA and Section 504 claims against her in her individual capacity. From the face of the complaint, it is not clear whether Super is alleging this claim against the DSS Commissioner or any of the other individual defendants in their individual capacities. Those individual-capacity claims should be dismissed because the ADA and Section 504 do not permit suits against officials in their individual capacities. *Garcia*, 280 F.3d at 107. Starkowski also moves for dismissal of Super's negligence claim against him, found in Count Eight of the Complaint. That claim will be dismissed because Connecticut and its officials are immunized against state law claims absent a waiver, which the state has not made

in this case. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Furthermore, Connecticut law protects Starkowski from the negligence claim against him in his individual capacity. Conn. Gen. Stat. § 4-165(a).

       7.    *Summary*

The defendants' motions to dismiss are, in principal, denied. Super has pled sufficient facts in her complaint to state a claim that she was denied an accommodation that was reasonable and necessary to enable her to use and enjoy the dwelling of her choice. Her request to continue receiving Section 8 benefits while she undergoes mental health treatment – i.e., her request for an exception to the defendants' neutral rule barring rental assistance to convicted felons or residents who have committed crimes on their property – is cognizable as an "accommodation" under the FHA, ADA, and Section 504. Next, Super has pled sufficient facts to demonstrate how the accommodation is necessary for her to obtain housing; she has also pled facts permitting the inference that her mental disability was the cause of her assault of Murphy and, as a result, she required an accommodation by reason of her disability. The plaintiff's complaint also states enough facts to demonstrate the defendants were personally involved in, and not merely vicariously liabile for, her purported denial of a reasonable accommodation. Finally, the defendants are not immune from suit under Section 504, although Starkowski, the appropriately identified DSS Commissioner, may not be sued for damages under the FHA or ADA. The DSS Commissioner also may not be sued in his individual capacity under the ADA or Section 504, or for common law negligence. Thus, Wilson-Coker's motion to dismiss is granted in part and denied in part, while the remaining motions to dismiss are denied in their entirety.

B.    Super's motion for leave to amend her complaint and join additional parties

Super has filed a motion for leave to amend her complaint and join additional parties. Her amendments are intended to: (1) substitute one defendant (Starkowski for Wilson-Coker) and add four more defendants;[10] (2) add additional facts that the defendants claimed in their motions to dismiss were lacking; and (3) clarify which claims Super was asserting against each defendant and what relief she was seeking from them. Many of the new facts are helpful, but they are not necessary to overcome the defendants' motion to dismiss. Furthermore, the substitution and addition of new parties, as well as the clarification of claims against them, do not appear to raise any novel issues not already covered in the motions to dismiss. The only problem is the addition of DSS, as a state agency defendant, for injunctive relief sought under the FHA (Count Five) and ADA (Count Six). To obtain that injunctive relief, Super may only sue the responsible DSS officials in their official capacities and not the agency itself; DSS, as an arm of the state, would be protected by sovereign immunity. *Harris*, 572 F.3d at 72. DSS may also not be sued under common law negligence in Count Eight because it has not waived its immunity from suit.

Wilson-Coker objects to Super's motion. She raises the same arguments in opposition to amending the complaint as she did in her motion to dismiss; I reject those arguments for the reasons stated in my discussion of the defendants' motions to dismiss. Wilson-Coker also objects to Super's motion for leave to amend on the grounds that there is no "good cause," per Fed. R. Civ. P. 16(b)(4), to modify the scheduling order, which set September 19, 2009 as

_____

[10] The new defendants, other than Starkowski, are Mary Cattanach of DSS, Maritza Javier of SHA, and the DSS and SHA agencies.

Super's deadline to add parties and amend the pleadings. There is sufficiently good cause to grant Super leave to amend her complaint. Super seeks to amend the pleadings in order to meet Wilson-Coker's previous demands for clarification in her motion to dismiss. Permitting the relatively minor changes Super wishes to make, especially at this early juncture in the case, will not prejudice either party. *Cf. Huesser v. Hale*, No. 3:07cv1660 (CSH), 2009 U.S. Dist. LEXIS 105482 (D. Conn. Nov. 12, 2009) (denying motion for leave to amend pleadings as untimely and prejudicial when motion was filed five days before discovery deadline and sought to add 16 new claims to a complaint that had previously contained only ten). The plaintiff's motion is granted and Super may amend her complaint and join additional parties consistent with my rulings on the defendants' motions to dismiss.

## IV.     Conclusion

For the reasons set forth above, defendant Wilson-Coker's motion to dismiss (doc. # 33) is GRANTED IN PART and DENIED IN PART. The remaining defendants' motions to dismiss (docs. # 43, # 47, & # 48) are DENIED. Super's motion for leave to amend her complaint and join additional parties (doc. # 73) is GRANTED. Any amendments to the complaint shall be consistent with the rulings in this decision.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2010.

  /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge
